**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE**

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | No._____ |
| | ) | |
| ROBERT LEE WARD, SHELAENA RHEA | ) | |
| WARD, WARD CONSTRUCTION, | ) | |
| ANDREA MAY GUMMO, Individually | ) | |
| and on behalf of her minor child, MAYKAYLA | ) | |
| DEEANNA GUMMO and SARAH WARD, | ) | |
| Individually and on behalf of her minor | ) | |
| child KAITLIN WARD, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Comes the Plaintiff, the Cincinnati Insurance Company (Cincinnati), and would respectfully

show the Court as follows:

1.      This lawsuit involves citizens of different states, and the amount in controversy

exceeds $75,000 dollars.  Accordingly, this is a diversity case filed in accordance with 28 USC

section 1332(a).

2.      This lawsuit arises from events that occurred in the Middle District of Tennessee and

venue is, therefore, appropriate in this Court.

-1-

3.     This is an action seeking a declaratory judgment as to the extent of insurance coverage for an ATV accident which occurred on January 27, 2012. At present, Cincinnati does not contest its obligation to defend under the Business CGL and Umbrella, but seeks denial of coverage under the Executive Homeowner's and Business Auto as well as a clarification of the obligation to indemnify for certain allegations made by the underlying Plaintiffs. The insureds on the various policies which will be discussed are Robert Lee Ward, Shelaena Ward, and Ward Construction. Sarah Ward, individually and on behalf of her minor child, Kaitlin Ward, and Andrea May Gummo, individually and on behalf of her minor child, Maykayla Deeanna Gummo, are made parties because they filed the underlying lawsuits against Robert Ward, Shelaena Ward, and Ward Construction, and their rights and ability to recover against the Wards will be directly affected by the outcome of this declaratory judgment action.

4.     The Cincinnati Insurance Company is an Ohio corporation whose chief place of business is located at 6200 South Gilmore Street, Fairfield, Ohio 45014.

5.     Robert Lee Ward, Shelaena Ward, and Ward Construction are all located at 7064 Tooley Branch Road, Westmoreland, Tennessee.

6.     Sarah and Kaitlin Ward are believed to reside in Macon County, Tennessee, but their addresses are unkown. They may be served through their attorney, Benjamin E. Winters, 1709 19th Ave. S., Nashville, Tennessee 37212.

7.      Andrea May and Maykayla Deeanna Gummo are believed to reside in Nocona, Texas, but their exact addresses are unknown. They may be served through their attorney, David Randolph Smith, 1913 21st Ave. S., Hillsboro Village, Nashville, Tennessee 37212.

8.      This declaratory judgment action arises from two underlying law suits. The first was filed by Sarah Ward on behalf of herself and Kaitlin Ward in the Circuit Court for Macon County, Tennessee at Lafayette on September 17, 2012. The Complaint was amended on October 5, 2012. A photocopy of the Amended Complaint is attached hereto and filed as Exhibit 1 to this Complaint.

9.      The second underlying case was filed by Andrea May Gummo on behalf of herself and her daughter, Maykayla Deeanna Gummo. That lawsuit was filed in the United States District Court for the Middle District of Tennessee on September 5, 2012. A photocopy of the Gummo Complaint is attached hereto and filed as Exhibit 2 to this Complaint.

10.     This lawsuit involves insurance policies written by the Cincinnati Insurance Company. They include:

> (A)     An Executive Homeowner Policy, No. HO1 0557. The named insureds are Bobby Ward and Shelaena Ward. A certified copy of the Executive Homeowner Policy is attached hereto and filed as Exhibit 3 to the Complaint.
>
> (B)     Policy No. ENP 001 28 41-EBA 001 28 41, with Ward Construction as the named insured. This policy includes General Liability Coverage which uses Cincinnati's form GA 101 12 04, a Business Auto Policy using Cincinnati's form OA 101 03 06, and an

-3-

Umbrella Policy using Cincinnati's form US 101 UM 04. The complete
Ward Construction insurance package, including all three of these
coverage forms, is attached hereto and filed as Exhibit 4.

11.     The two Complaints contain similar, but not identical, allegations of fact and causes

of action. The Complaints allege, and it is agreed, that Kaitlin Ward is the granddaughter of

Defendants Robert Lee and Shelaena Ward. Andrea May Gummo is a friend of Kaitlin's, and is

alleged to have been planning to spend the night with Kaitlin at Mr. and Mrs. Ward's home on the

evening of the accident.


## ALLEGATIONS OF THE WARD COMPLAINT


12.     Sarah and Kaitlin Ward's Complaint (The Ward Complaint) includes the following

factual allegations:


(a)     On the evening of January 27, 2012, Kaitlin was at the Ward's
home preparing to spend the night with Maykayla. Also at the home were
two friends of the Plaintiff, Tyler Ward and Sasha Biggs.

(b)     Sasha Biggs lived about one mile from Mr. and Mrs. Ward.

(c)     Sasha was expected home late in the evening. Her home was
approximately one mile from the Wards' home.

(d)     At approximately 11 o'clock p. m., and during inclement weather,
Mrs. Shelaena Ward is alleged to have given permission to the teenagers
to use two ATVs to take Sasha home. The Complaint alleges that the 4
wheeler ATVs were treated as property/equipment of Defendant Ward
Construction and were serviced and maintained as  assets of Ward
Construction.

-4-

(e)    When the four young people left the Ward home, Kaitlin Ward was driving one four wheeler with Maykayla as the passenger, and Tyler Ward was operating the second four wheeler with Sasha as a passenger.

(g)    Supposedly, the most direct route from the Ward home to Sasha Biggs' home was a one-mile paved road which included a hill and a sharp turn. The young people apparently decided to take a longer 3-mile route, which included a gravel road, a paved road, another hill and sharp turn.

(h)    The young people safely arrived at Sasha's home, after which Kaitlin, Tyler, and Maykayla began their return trip using the same 3-mile route. However, on this occasion, Maykayla drove the ATV while Kaitlin rode as her passenger.

(i)    The Complaint alleges that the four wheeler occupied by Kaitlin and Maykayla had previously experienced mechanical and/or operational malfunctions, of which Mr. and Mrs. Ward and Ward Construction were all aware. In addition, the young people did not wear helmets and were not required to wear helmets by the Defendants.

(j)    While returning to the Ward's home, Maykayla lost control while attempting to negotiate a right hairpin turn. "While attempting to negotiate said turn, and due to a malfunctioning of the four-wheeler as well as operator inexperience, Maykayla Gummo lost control of the four wheeler and Plaintiff and Maykayla Gummo plunged off a cliff approximately 50 feet. The Complaint states that Kaitlin was seriously injured in the accident.

13.    The Complaint alleges that the Defendants were guilty of negligence, negligence *per se* and recklessness in the following respects:

(a)    The four wheeler carrying Kaitlin and Maykayla was in a dangerous and defective condition, of which the Defendants were supposedly aware;

(b)    Negligent and reckless maintenance of the subject four wheeler, including failing to properly inspect, maintain, monitor and/or service the four wheeler;

-5-

(c)     Negligent and reckless supervision of the minor children, including Plaintiff, by allowing children to operate four wheelers at night, during inclement weather, on unpredictable terrain, and without helmets;

(d)     Negligent entrustment to minors, including Plaintiff, by allowing children to operate four wheelers at night, during inclement weather, on unpredictable terrain, and without wearing helmets;

(e)     Negligence *per se* by allowing minors to unlawfully operate ATVs on public roads in violation of T.C.A. Section 55-8-185;

(f)     Breach of duty of care to minor Plaintiff;

14.     According to the Plaintiffs, the alleged acts and omissions of the Defendants were wanton, willful, and demonstrated gross disregard for public safety and the safety of Kaitlin Ward.

15.     The Complaint says that Sarah and Kaitlin Ward are entitled to exemplary damages because Defendant's conduct constituted gross negligence, involved an extreme degree of risk with all of the factors considered, and the probability and magnitude of potential harm to others. Defendants are said to have proceeded with conscious indifference to the safety and welfare of the public and the Plaintiffs in general, despite actual, subjective awareness of the risks involved.

16.     Kaitlin Ward seeks compensatory damages for painful and permanent physical injuries, pain, suffering, emotional distress, loss of enjoyment of life, physical disfigurement, permanent impairment, loss of earnings, loss of earning capacity, medical, and hospital and rehabilitation expenses.

17.     Sarah Ward sues for the loss of Kaitlin's services and for the added costs and

-6-

expenses required to care for Kaitlin's injuries. Ms. Sarah Ward also sues for her own emotional distress.

18.     The Complaint goes on to demand punitive damages.

19.     The Complaint concludes by demanding economic damages for Kaitlin Ward in the amount of one million dollars, non-economic damages in favor of Kaitlin Ward in the amount of $750,000 dollars, punitive damages in favor of Kaitlin Ward in the amount of $500,000 dollars, damages for loss of service and emotional distress in favor of Sarah Ward, in the amount $250,000 dollars.

## ALLEGATIONS OF THE GUMMO COMPLAINT

20.     The Complaint filed by Andrea Gummo on behalf of her minor child, Maykayla (The Gummo Complaint), is similar, but much longer.

21.     The Complaint seeks $3,000,000 dollars in non-economic damages for Maykayla, $3,000,000 in economic damages, $1,000,000 dollars for emotional distress for Andrea Gummo and loss of Maykayla's services, punitive damages in the amount of $6,000,000 dollars for Maykayla Gummo and punitive damages in the amount of $2,000,000 for Andrea Gummo.

22.     This demand is, obviously, far in excess of the Tennessee caps on tort damages.

-7-

Consequently, the first eight pages of the Complaint are devoted to a constitutional challenge against Tennessee's tort caps.

23.     The Complaint alleges that Ward Construction is a sole proprietorship operated by Robert Lee Ward and Shelaena Ward. Ward Construction is said to be a licensed contractor, and also provides emergency disaster preparedness equipment and supplies and is in the business of manufacturing mobile homes and supplies.

24.     The Complaint says that as a sole proprietorship, the Defendants individually own many motor vehicles, with 130 motor vehicles actually registered in their names.

25.     With respect to the four wheeler, Complaint states:

> Plaintiffs aver, on information and belief, that the Honda four wheeler involved in the accident made the basis of this suit, was purchased, owned, maintained, and operated by the Defendants, including Defendants d/b/a Ward Construction. Plaintiffs further aver, on information and belief, that the Honda four wheeler involved in the accident made the basis of this suit was treated as equipment and an asset of Ward Construction and was serviced and maintained as an asset of "Ward Construction."

26.     The allegations of the Complaint state:

> (a)     Maykayla and Kaitlin frequently spent the night at the Ward's home. Maykayla and Kaitlin met in the 8th grade. They have driven four wheelers on the home property in the past and Maykayla had driven the Honda four wheeler involved in this accident in the past.

-8-

(b)     According to the Complaint, Maykayla and Kaitlin were dropped off by the school bus at Ward Construction's offices in Westmoreland, Tennessee.

(c)     According to the Complaint, there are two homes on the Ward property, Mr. and Mrs. Ward's personal residence, and a home that was occupied by Kaitlin's father. Also said to have been living with the Defendants in their house was Kaitlin's cousin, Tyler Ward, who was 17 and had no driver's license.

(d)     Mrs. Ward drove Maykayla and Kaitlin to Sonic, and then picked up Sasha Biggs.

(e)     The factual allegations say that the Defendants had engaged in a pattern of prior negligent entrustment and negligent supervision because they frequently allowed Tyler, who had no driver's license, to take Sasha home in the Ward's truck.

(f)     Sasha was originally supposed to return home at 10, but her mother agreed to let her stay later.

(g)     Sometime after 11, it was necessary for Sasha to return home. Supposedly, Shelaena Ward was taking a bubble bath and did not want to drive Sasha home herself. The Complaint says the weather was poor, with rain, and a high of 42 degrees.

(h)     Tyler Ward allegedly asked to use one of the four wheelers to take Sasha home. Shelaena Ward is alleged to have given permission to use the four wheeler, but she also stated that Maykayla and Kaitlin had to go with Tyler on a different four wheeler to make sure Tyler dropped Sasha off and came home.

(i)     Supposedly Mrs. Ward believed Tyler to be unreliable, so she had insisted that he be accompanied by Kaitlin and Maykayla.

(j)     According to the Complaint, Tyler was in the lead, and elected the longer route to Sasha's house. The children dropped Sasha off at her house without incident.

(k)     Kaitlin was said to have asked Maykayla to drive the ATV on the return trip because Kaitlin was very cold.

(l)     When the young people left Sasha's home, Tyler was in the lead and

-9-

Case 3:13-cv-01214   Document 1   Filed 11/04/13   Page 9 of 34 PageID #: 9

again took the long way back. While attempting to negotiate a sharp curve on the "curvy, downhill, narrow road" Maykayla lost control and drove off the cliff. The four wheeler is said to have fallen on top of Maykayla.

(m)     The factual allegations state that Mrs. Ward was guilty of negligence, recklessness, and negligence *per se* because:

1.     It is illegal to drive four wheelers on a public road;

2.     Maykayla's experience in driving an ATV was solely off road. She had never driven an ATV on a paved surface, and no helmets were used on this evening, or on any prior occasions;

3.     Allowing the children to drive at that late hour, in darkness and inclement weather was both negligent and reckless;

4.     The negligent and reckless entrustment of the four wheeler and use of the vehicle occurred on the property of Mr. and Mrs. Ward;

5.     The four wheeler was defective and improperly maintained (to the point of recklessness).

(n)     The Complaint alleges that Mr. and Mrs. Ward were aware of prior problems with the four wheeler and they knew it would not properly downshift or brake properly. This paragraph of the Complaint alleges that the Wards failed to properly preserve the evidence after the accident and are therefore guilty of spoliation.

(o)     Maykayla states that the steering "locked up," the brakes were not working, and the ATV was not down-shifting. According to the Complaint Mr. and Mrs. Ward knew or should have known of the recklessly defective condition of the four wheeler, which was the proximate cause of the accident, separate and apart from any claim of negligent entrustment and supervision.

(p)     The Complaint says that Maykayla landed in a creek, where she lay for 20 to 30 minutes and suffered hypothermia. The first responders originally planned to take Maykayla and Kaitlin to Sumner Regional Medical Center in Gallatin, but eventually a Vanderbiilt Life-Flight helicopter was used to take Mayakayla to Vanderbilt. Mrs. Gummo rushed to the hospital, where she saw her daughter's mangled arm and other injuries, and burst into tears.

-10-

(q)    Maykayla is said to have suffered catastrophic "critical"physical injuries, and she was hospitalized at Vanderbilt for three weeks. Among other things, Maykayla suffered from hemorraghic shock, hypothermia, great pain, and the amputation of her left arm. She also had a fractured right femur, underwent numerous blood transfusions, and other injuries. According to the Complaint, she continues to take a number of pain medications.

27.    The Complaint outlines three causes of action: negligence, negligence *per se*, and

recklessness based on the following claims:

(a) the four wheeler was in a dangerous and defective condition.

(b) negligent and reckless maintenance of the four wheeler, including failure to properly inspect, maintain, monitor and/or equip the four wheeler.

(c) spoliation of evidence.

(d) negligent and reckless supervision of the minor children.

(e) negligent and reckless entrustment of the ATVs to minors, especially in view of the fact that the minors were allowed to operate the ATVs on public roads, in the dark, late at night, under cold and wet conditions.

(f) negligent and reckless supervision in directing Maykayla to go out late at night on a four wheeler simply to "make sure" that Tyler Ward returned home.

(g) negligence and recklessness in Mrs. Ward's failure to personally take Sasha Biggs home in her own vehicle so she could stay home and take a bubble bath.

(h) negligence and recklessness in directing Maykayla to accompany Tyler given Mrs. Ward's known concern about Tyler's behavior and judgment.

(i) the negligence of Mrs. Ward in telling Maykayla to leave the property on a cold and rainy night to chaperone Tyler Ward.

(j) the defective condition of the Honda four wheeler that was owned,

-11-

operated and maintained by the Defendants, including Ward Construction.

28.     The Complaint alleges that Maykayla was free from negligence, and that no act or omission on her part caused the accident.

29.     The Complaint says that the Plaintiffs are entitled to exemplary damages because their actions constituted malice and/or recklessness. "Despite actual, subjective awareness of the risk involved, Defendants proceeded with conscious indifference to the rights, safety, and welfare of others, including Maykayla Gummo.

30.     As previously noted, the Gummos seek a combined $15,000,000 dollars in damages, and ask the Court to declare the Tennessee tort caps contained in T.C.A. 29-39-102 at sic unconstitutional.

## COVERAGE FOR THE SARAH/KAITLIN WARD LAWSUIT UNDER THE
## EXECUTIVE HOMEOWNER'S POLICY

31.     The Ward Complaint states that Ward Construction is a sole proprietorship operated by Robert and Shelaena Ward.

32.     Paragraph 8 of the Ward Complaint states that the ATV involved in this accident was treated as the property/equipment of Defendant Ward Construction and was serviced and maintained

-12-

as an asset of Ward Construction.

33.     Furthermore, Paragraph 17 of the Ward Complaint states that the ATV was in a dangerous and defective condition of which the Defendants were aware and that the Defendants were guilty of negligence and reckless maintenance of the ATV.

34.     Paragraph 14 states that one of the factors in the cause of the accident was "a malfunctioning of the four wheeler."

35.     Paragraph 13 of the Executive Homeowners Policy defines the "insured" as "you." In that policy the only named insureds are Bobby and Shelaena Ward.  Ward Construction is not mentioned as an insured.

36.     Paragraph 16 of the Definitions defines a "motor vehicle" as "a self-propelled land or amphibious vehicle," so the ATV qualified as a motor vehicle under the terms of the Executive Homeowners Policy.

37.     The insuring agreement for Section II (1) Coverage E - Personal Liability states:

"We" will pay those sums the "insured" becomes legally obligated to pay as damages because of "bodily injury", "personal injury", or "property damage" to which this insurance applies.

38.     The policy defines "bodily injury" as "bodily harm, sickness or disease sustained by

-13-

a person, including death resulting from any of these at any time."

39.    The lawsuit filed by the Wards seeks damages for emotional distress, which would not be included within the definition of "bodily injury", and, therefore, are not covered by the Executive Homeowners Policy.

40.    Exclusion B - Business Pursuits states that there is no coverage for:

"bodily injury...arising out of or in connection with a "business" conducted from "an insured location" or engaged in by an "insured" whether or not the "business" is owned or operated by an "insured" or employs an "insured."

41.    The Complaint specifically states that the allegedly malfunctioning ATV was treated as an asset of Ward Construction, a business, which was responsible for the ATV's maintenance. Consequently, all the Plaintiffs' claims arising from allegedly defective maintenance and the alleged defective condition of the ATV, are excluded because they arise from a business which not only operated from the "insured location", but was also allegedly engaged in by both "insureds."

42.    Exclusion E. Motor Vehicles states, in its entirety, that there is no coverage for:

"bodily injury", "personal injury" or "personal damage" arising out of:

(1)    The ownership, maintenance, occupancy, operation, use, loading or unloading of "motor vehicles" owned or operated by or rented or loaned to an "insured";

(2)    The entrustment of a "motor vehicle" by an "insured" to any person;

(3)    The failure to supervise or negligent supervision of any person by an "insured" involving the ownership, maintenance, occupancy,

-14-

operation, use, loading or unloading of a "motor vehicle"; or

(4)     Vicarious liability, whether or not statutorily imposed, for the actions
        of any person or organization using a "motor vehicle".

This exclusion does not apply to the following described "motor vehicles",
provided they are not being:

(a)     Operated in, or practicing for, any prearranged or organized
        race, speed contest or other competition;

(b)     Rented to others by an "insured";

(c)     Used to carry persons or cargo for a charge; or

(d)      Used for any "business" purpse except for a motorized gold
        cart while on a golfing facility.

Described "motor vehicles":

1)      A trailer not towed by or carried on a "motor vehicle";

2)      A "motor vehicle" designed for recreational use off public
        roads which is not subject to motor vehicle registration and:

        a)     Not owned by an "insured"; or

        b)     Owned by an "insured" provided the "occurrence"
               takes place on an "insured location" as described in
               Paragraphs a., b., d., e., or h. of the definition of
               "insured location";

3)      A motorized golf cart, or

4)      A "motor vehicle" not subject to motor vehicle registration
        which is:

        a)     Used to service an "insured's" residence;

        b)     Designed for assisting the handicapped and, at the time
               of an "occurrence" it is:

               (i)     Being used to assist a handicapped person; or

-15-

(ii)      Parked on an "insured location"; or

c)      In dead storage on an "insured location".

43.      As previously discussed, the ATV qualified as a "motor vehicle" under the definition contained in the policy.

44.      The Ward Complaint is based squarely on allegations concerning the ownership, maintenance, operation, and use of a "motor vehicle" owned by an insured.

45.      The Ward Complaint also arises from allegations of reckless or negligent entrustment of the "motor vehicle" by Mrs. Ward, an "insured" to "any person."

46.      The lawsuit also involves allegations of failure to supervise and negligent supervision of any person (Mayakayla and Kaitlin) by an "insured" (Mrs. Ward) involving the maintenance, occupancy, operation, and use of a "motor vehicle."

47.      Consequently, the basic requirements of the exclusion, found in subparagraph e(1), (2), and (3) have been met.

48.      The exclusion identifies four types of vehicles which, under the proper circumstances, would not be subject to the exclusion. Subparagraph (2) addresses a "motor vehicle" designed for recreational use off public roads which is not subject to motor vehicle registration and owned by an

-16-

"insured, providing the 'occurrence' takes place on an 'insured location.'"

49.     The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage'..."

50.     The prevailing rule is that it is the site of the accident, rather than the site of negligent entrustment, that determines whether an "occurrence" took place on an "insured location." (*Arrowood Indemnity Company v. King* 605 F 3d 62 (2d Circuit 2010)).

51.     An all terrain vehicle is a "motor vehicle" designed for recreational use off public roads.

52.     While an all terrain vehicle is subject to the Tennessee Code provisions concerning title certificates, use of an all terrain vehicle on a public road, whether hard top or gravel is prohibited in the county where this accident occurred, and such vehicles are not subject to motor vehicle registration or permitted to bear a license plate.

53.     Because this ATV was a "motor vehicle" designed for recreational use off public roads, not subject to motor vehicle registration, and the "occurrence" did not take place on an "insured location", Exception (2) to the Motor Vehicles Exclusion does not apply. Consequently, coverage is barred by the "Motor Vehicles" exclusion.

-17-

54.     All terrain vehicles are specifically excluded from the registration provisions of T.C.A 55-3-101 because ATVs are vehicles which may be legally driven or moved upon a highway only for the purpose of crossing the highway from one property to another. See T.C.A. 55-8-185.

55.     Furthermore, coverage would be excluded even if the converse were true, and the ATV _was_ required to be registered. The exception to the exclusion applies only to certain off-road vehicles which are _not_ subject to motor vehicle registration.

56.     Consequently, Exclusion E, Motor Vehicles, precludes coverage under the Executive Homeowner's Policy for any of the claims made in the underlying lawsuit.

57.     The Executive Homeowners Policy includes the Special Provisions Endorsement (Tennessee), form HR771TN (10/10). On page 3 of that form the following exclusion X is added to the policy: "We do not provide coverage for punitive or exemplary damages." Consequently, the Executive Homeowners Policy does not provide any coverage for the punitive and/or exemplary damages claims made by the Wards.

## COVERAGE FOR THE WARD COMPLAINT UNDER THE BUSINESS AUTO POLICY

58.     The Ward Construction Policy includes three different coverages relevant to this

-18-

lawsuit: an Auto Coverage Form, a General Liability Coverage form, and an Umbrella.

59. The auto coverage uses Cincinnati's form AA 101 03 06. The insuring paragraph states:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident"and resulting from the ownership, maintenance or use of a covered "auto."

60. The policy definitions state that the term "auto" means:

> (1.) A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

> (2.) Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

> However, "auto" does not include "mobile equipment".

61. An ATV is not designed for use on public roads, nor is it subject to any financial responsibility or insurance law, and, therefore, is not an "auto" under the policy.

62. Since the Auto Coverage Form provides coverage only for "autos" as that term is defined within the policy and an ATV is not an "auto", the policy provides no coverage whatsoever for the Ward lawsuit.

-19-

## COVERAGE FOR THE WARD COMPLAINT UNDER WARD

## CONSTRUCTION'S COMPREHENSIVE GENERAL LIABILITY COVERAGE

63.     Ward Construction's General Liability Coverage (CGL) uses Cincinnati's form GA

101 12 04.  The insuring paragraph states:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this
> insurance applies.

64.     The policy definition of "bodily injury" defines the term as "bodily injury, sickness

or disease sustained by a person, including death resulting from any of these at any time."

65.     In view of the fact that the policy's definition of "bodily injury" does not include

emotional distress, none of the Wards' claims arising from emotional distress are covered by the

CGL.

66.     The named insured on the CGL is "Ward Construction."

67.     Ward Construction's CGL includes Cincinnati's form GA 233 02 07.  Among other

things, this Endorsement deletes the "Who is an insured" provision of the policy and replaces it with

the following:

1.     If you are designated in The Declarations as

-20-

* * *

(b)     A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

* * *

(d)     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stock holders are also insureds, but only with respect their liability as stockholders.

68.     The Ward Complaint states that the ATV in question was treated as the property of Ward Construction. It also states that Ward Construction was responsible for the maintenance of the ATV.

69.     Because the "Who Is An Insured" section of the policy requires that the conduct resulting in this lawsuit arise from the insured business, Mr. and Mrs. Ward are insured, if at all, only for their conduct on behalf of the company. In other words, any insurance available to the Wards under the CGL would be limited to their decisions concerning maintenance.

70.     Because of these provisions, any allegations against the Wards arising from claims of negligent supervision, negligent entrustment, recklessness and negligence *per se,* and breach of duty of care to the minor Plaintiff are not covered because those acts were not in the course of the Wards' duties with the company.

-21-

**COVERAGE FOR THE WARD COMPLAINT UNDER**

**WARD CONSTRUCTION'S UMBRELLA**


71.     Ward Construction also has a Commercial Umbrella Liability Coverage which uses

Cincinnati's form US 101 UM 12 04.  The "Who is an Insured" paragraph states:


> If you are designated in the declarations as:
>
>         *        *        *
>
> (2) A partnership or joint venture, you are an insured.  Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.
>
>         *        *        *
>
> (4) An organization other than a partnership, joint venture, or limited liability company, you are an insured.  Your "executive officers" and "directors" are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.


72.     The Complaint states that the ATV was treated as the property of Ward Construction,

and Ward Construction was responsible for its maintenance.  Any coverage available to Mr. and Mrs.

Ward under this Umbrella Policy would be limited to their decisions on maintenance.


73.     There could be no obligation to indemnify Mr. and Mrs. Ward for losses arising from

negligent supervision, negligent entrustment, or negligence *per se,* because those actions were all

taken in their individual capacities rather than as a result of their duties to the company.


-22-

## COVERAGE FOR THE GUMMO COMPLAINT UNDER THE

## EXECUTIVE HOMEOWNER'S POLICY

74.     Paragraph 7 of the Gummo Complaint alleges that Ward Construction is a sole proprietorship owned by Robert Lee and Shaleana Ward.

75.     Paragraph 9 of the Complaint alleges that the four wheeler involved in the accident was treated as equipment and an asset of Ward Construction, and was serviced and maintained as an asset of Ward Construction.

76.     Paragraph 18 of the Gummo Complaint alleges that the four wheeler was defective and improperly maintained, and according to Paragraph 22, the ATV would not properly downshift or brake properly.

77.     The Executive Homeowner's definition of the term "insured" means "you," meaning the named insureds. The only named insureds are Bobby and Shaleana Ward, and the company is not mentioned as an insured.

78.     Paragraph 16 of the Definitions section states that a "motor vehicle" is a "self-propelled land or amphibious vehicle." Thus, the ATV is a motor vehicle as defined under the terms of the Executive Homeowner's Policy.

-23-

79.     The insuring agreement for Section II (1) Coverage E - Personal Liability states:

"We" will pay those sums the "insured" becomes legally obligated to pay as damages because of "bodily injury", "personal injury", or "property damage" to which this insurance applies.

80.     The policy defines "bodily injury" as "bodily harm, sickness or disease sustained by a person, including death resulting from any of these at any time."

81.     The Gummos seek compensation for pain and suffering, mental anguish, emotional distress, and loss of enjoyment of life. Because the policy definition of "bodily injury" does not include emotional distress, none of these could be covered by the Executive Homeowner's Policy.

82.     Exclusion B - Business Pursuits states that there is no coverage for:

"bodily injury...arising out of or in connection with a "business" conducted from "an insured location" or engaged in by an "insured" whether or not the "business" is owned or operated by an "insured" or employs an "insured."

83.     The Complaint states that the allegedly malfunctioning ATV was treated as an asset of Ward Construction, a business, which was responsible for the ATV's maintenance. Consequently, all the Gummos' claims arising from allegedly defective maintenance and the alleged defective condition of the ATV, are excluded because they arise from a business which not only operated from the "insured location", but was also engaged in by both "insureds."

84.     Exclusion E. Motor Vehicles states, in its entirety, that there is no coverage for:

"bodily injury", "personal injury" or "personal damage" arising out of:

-24-

(1)     The ownership, maintenance, occupancy, operation, use, loading or unloading of "motor vehicles" owned or operated by or rented or loaned to an "insured";

(2)     The entrustment of a "motor vehicle" by an "insured" to any person;

(3)     The failure to supervise or negligent supervision of any person by an "insured" involving the ownership, maintenance, occupancy, operation, use, loading or unloading of a "motor vehicle"; or

(4)     Vicarious liability, whether or not statutorily imposed, for the actions of any person or organization using a "motor vehicle".

This exclusion does not apply to the following described "motor vehicles", provided they are not being:

(a)     Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(b)     Rented to others by an "insured";

(c)     Used to carry persons or cargo for a charge; or

(d)      Used for any "business" purpse except for a motorized gold cart while on a golfing facility.

Described "motor vehicles":

1)     A trailer not towed by or carried on a "motor vehicle";

2)     A "motor vehicle" designed for recreational use off public roads which is not subject to motor vehicle registration and:

a)     Not owned by an "insured"; or

b)     Owned by an "insured" provided the "occurrence" takes place on an "insured location" as described in Paragraphs a., b., d., e., or h. of the definition of "insured location";

3)     A motorized golf cart, or

4)     A "motor vehicle" not subject to motor vehicle registration

-25-

which is:

a)      Used to service an "insured's" residence;

b)      Designed for assisting the handicapped and, at the time of an "occurrence" it is:

     (i)      Being used to assist a handicapped person; or

     (ii)      Parked on an "insured location"; or

c)      In dead storage on an "insured location".

85.      As previously discussed, the ATV qualified as a "motor vehicle" under the definition contained in the policy.

86.      The Gummo lawsuit is based squarely on allegations concerning the ownership, maintenance, operation, and use of a "motor vehicle" owned by an insured.

87.      The Gummo lawsuit also arises from allegations concerning reckless or negligent entrustment of the "motor vehicle" by Mrs. Ward, and "insured" to "any person."

88.      The lawsuit also involves allegations of failure to supervise and negligent supervision of any person (Mayakayla and Kaitlin) by an "insured" (Mrs. Ward) involving the maintenance, occupancy, operation, and use of a "motor vehicle."

89.      Consequently, the basic requirements of the exclusion, found in subparagraph e(1), (2), and (3) have been met.

-26-

90.     The exclusion identifies four types of vehicles which, under the proper circumstances, would not be subject to the exclusion.  Subparagraph (2) addresses a "motor vehicle" designed for recreational use off public roads which is not subject to motor vehicle registration <u>and</u> owned by an "insured, providing the 'occurrence' takes place on an 'insured location.'"

91.     The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage'..."

92.     The prevailing rule is that it is the site of the accident, rather than the site of negligent entrustment, that determines whether an "occurrence" took place on an "insured location." (*Arrowood Indemnity Company v. King* 605 F 3d 62 (2d Circuit 2010)).

93.     An all terrain vehicle is a "motor vehicle" designed for recreational use off public roads.

94.     While an all terrain vehicle is subject to the Tennessee Code provisions concerning title certificates, use of an all terrain vehicle on a public road, whether hard top or gravel is prohibited in the county where this accident occurred, and such vehicles are not subject to motor vehicle registration or permitted to bear a license plate.

-27-

95.     Because this ATV was a "motor vehicle" designed for recreational use off public roads, not subject to motor vehicle registration, and the "occurrence" did not take place on an "insured location", Exception (2) to the Motor Vehicles Exclusion does not apply. Consequently, coverage is barred by the "Motor Vehicles" exclusion.

96.     All terrain vehicles are specifically excluded from the registration provisions of T.C.A 55-3-101 because ATVs are vehicles which may be legally driven or moved upon a highway only for the purpose of crossing the highway from one property to another. See T.C.A. 55-8-185.

97.     Furthermore, coverage would be excluded even if the converse were true, and the ATV was required to be registered. The exception to the exclusion applies only to ceratin off-road vehicles which are *not* subject to motor vehicle registration.

98.     Consequently, Exclusion E, Motor Vehicles, precludes coverage under the Executive Homeowner's Policy for any of the claims made in the underlying lawsuit.

99.     The Executive Homeowners Policy includes the Special Provisions Endorsement (Tennessee), form HR771TN (10/10). On page 3 of that form the following exclusion X is added to the policy: "We do not provide coverage for punitive or exemplary damages." Consequently, the Executive Homeowners Policy does not provide any coverage for the punitive and/or exemplary damages claims made by the Gummos.

-28-

## COVERAGE FOR THE GUMMO COMPLAINT UNDER WARD CONSTRUCTION'S

## BUSINESS AUTO POLICY

100.    The auto coverage uses Cincinnati's form AA 101 03 06.  The insuring paragraph

states:

> We will pay all sums an "insured" legally must pay as damages because of
> "bodily injury" or "property damage" to which this insurance applies, caused
> by an "accident" and resulting from the ownership, maintenance or use of a
> covered "auto."

101.    The policy definitions state that the term "auto" means:

    1.    A land motor vehicle, "trailer" or semi-trailer designed for travel on
          public roads; or

    2.    Any other land vehicle that is subject to a compulsory or financial
          responsibility law or other motor vehicle insurance law where it is
          licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

102.    An ATV is not designed for use on public roads nor is it subject to any financial

responsibility or insurance law and, therefore, is not an "auto" under the policy.

103.    Since the Auto Coverage Form provides coverage only for "autos" as that term is

defined within the policy and an ATV is not an "auto", the policy provides no coverage whatsoever

for the Gummo lawsuit.

-29-

## COVERAGE FOR THE GUMMO COMPLAINT UNDER WARD

## CONSTRUCTION'S CGL

104.    Ward Construction's General Liability Coverage (CGL) uses Cincinnati's form GA

101 12 04.  The insuring paragraph states:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this
> insurance applies.

105.    The policy definition of "bodily injury" defines the term as "bodily injury, sickness

or disease sustained by a person, including death resulting from any of these at any time."

106.    In view of the fact that the policy's definition of "bodily injury" does not include

emotional distress, none of the Gummos' claims arising from emotional distress are covered by the

CGL.

107.    Ward Construction's CGL includes Cincinnati's form GA 233 02 07.  Among other

things, this Endorsement deletes the "Who is an insured" provision of the policy and replaces it with

the following:

> 1.    If you are designated in The Declarations as
>
>                        *        *        *
>
> (b)    A partnership or joint venture, you are an insured.  Your members,
> your partners, and their spouses are also insureds, but only with respect to the

-30-

conduct of your business.

\*       \*       \*

(d)    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stock holders are also insureds, but only with respect their liability as stockholders.

108.    The Gummo Complaint states that the ATV in question was treated as the property of Ward Construction. It also states that Ward Construction was responsible for the maintenance of the ATV.

109.    Because the "Who Is An Insured" section of the policy requires that the conduct resulting in this lawsuit arise from the insured business, Mr. and Mrs. Ward are insured, if at all, only for their conduct on behalf of the company. In other words, any insurance available to the Wards under the CGL would be limited to their decisions concerning maintenance.

110.    Because of these provisions, any allegations against the Wards other than their decisions concerning the maintenance of the ATV are not covered because those acts were not in the course of the Wards' duties with the company.

-31-

## COVERAGE FOR THE GUMMO COMPLAINT UNDER WARD

## CONSTRUCTION'S UMBRELLA

111.    Ward Construction also has Commercial Umbrella Liability Coverage which uses
Cincinnati's form US 101 UM 12 04. The "Who is an Insured" paragraph states:

> If you are designated in the declarations as:
>
>              \*       \*       \*
>
> (2) A partnership or joint venture, you are an insured. Your members,
> partners and their spouses are also insureds, but only with respect to the
> conduct of your business.
>
>              \*       \*       \*
>
> (4) An organization other than a partnership, joint venture, or limited liability
> company, you are an insured. Your "executive officers" and "directors" are
> insureds, but only with respect to their duties as your officers or directors.
> Your stockholders are also insureds, but only with respect to their liability as
> stockholders.

112.    The Complaint states that the ATV was treated as the property of Ward Construction,
and Ward Construction was responsible for its maintenance. Any coverage available to Mr. and Mrs.
Ward under this Umbrella Policy would be limited to their decisions on maintenance.

113.    There could be no obligation to indemnify Mr. and Mrs. Ward for losses arising from
negligent supervision, negligent entrustment, or negligence *per se,* because those actions were all
taken in their individual capacities rather than as a result of the Wards' duties to the company.

-32-

## CONCLUSION

114.     Cincinnati therefore respectfully requests that the Court enter a Declaratory Judgment finding the following:

1.     There is no coverage for either lawsuit under the Executive Homeowner's Policy and no obligation to defend.

2.     There is no coverage for punitive damages under the Executive Homeowner's Policy.

3.     The Executive Homeowner's Policy provides no coverage for claims of emotional distress.

4.     There is no obligation to indemnify under the Executive Homeowner's Policy for decisions related to the maintenance of the ATV.

5.     There is no coverage for either the Ward or Gummo lawsuits under Ward Construction's Auto Policy.

6.     There is no coverage under the CGL for emotional distress.

7.     The only coverage that would be available to Mr. and Mrs. Ward under the CGL would arise from their duties as owners of Ward Construction, which means that they would have

-33-

potential coverage only for decisions related to maintenance of the ATV.

8.      Mr. and Mrs. Ward have no coverage under the CGL for the remainder of the conduct on which this lawsuit is based.

9.      Like the CGL, any coverage which might be available to Mr. and Mrs. Ward under the Umbrella would be limited to their decisions related to maintenance of the ATV.

10.     The Umbrella affords no coverage to Mr. and Mrs. Ward individually for any of the other claims set forth in either lawsuit because the allegedly negligent supervision and negligent entrustment were not in the course and scope of Mr. and Mrs. Wards' responsibilities to Ward Construction.

Respectfully submitted this _23_ day of _October_, 2013 by,

_____
John M. Neal BPR # 005920
THE NEAL LAW FIRM
P.O. BOX 51930
Knoxville, Tennessee 37950
(865) 312-9135

-34-